IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **ANGELA SCOTT,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 17-143-CG-N** |
| | ) | |
| **CITY OF MOBILE,** *et al.,* | ) | |
| **Defendants.** | ) | |

REPORT AND RECOMMENDATION

Currently pending before this Court are Defendant, City of Mobile's Motion to Dismiss Count Four of Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6) (Doc. 15) and Defendant, Sam Cochran's Motion to Dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) and brief in support thereof. (Docs. 16 and 17). Both motions were referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4). Plaintiff has filed responses to both motions (Docs. 21, 22) to which Defendants have separately replied (Doc. 23, 24). For the sake of judicial economy this Court will address the motions together. After careful consideration of the record, it is recommended that the City of Mobile's and Sheriff Cochran's Motions to Dismiss be granted in part and denied in part as follows:

1)      Granted as to the City of Mobile's Motion with respect to Count IV pursuant to Alabama common law or the Alabama Constitution.

2)      Denied as to City of Mobile's Motion with respect to Count IV pursuant to 42 U.S.C § 1983.

3)      Granted as to Cochran's Motion to Dismiss Counts X and Count XI against Cochran in his official capacity.

4)      Granted as to Cochran's Motion to Dismiss with regard to all state claims asserted in Counts VI, VII, IX, X, and XI against Cochran in his official and individual capacity;

5)      Denied as to Cochran's Motion to Dismiss Counts X and Count XI against Cochran in his individual capacity.

6)      Granted as to Cochran's Motion to dismiss Count XII.

## FACTUAL AND PROCEDURAL BACKGROUND

This action arises out of an incident that occurred on April 20, 2015, wherein Plaintiff was involved in a vehicle accident on the on-ramp of Interstate 10 in Mobile, Alabama. (Doc. 1-1 at 5). Officer Corey O. Hunter ("Hunter") of the Mobile Police Department responded to the accident and ultimately arrested Plaintiff on an outstanding warrant. (*Id*. at 5-7).

The events that gave rise to the outstanding warrant are described by Plaintiff as follows: In June 2014, Plaintiff was given a ticket for speeding by the Mobile Police Department. (*Id*. at 4). Following the issuance of the ticket, Plaintiff attended a hearing in municipal court where it was determined that Plaintiff would be permitted to attend a six hour driver education course with Alabama Safety Institute, Inc. ("ASI"). According to Plaintiff, ASI and the City of Mobile have a mutual agreement wherein ASI provides driver improvement courses as directed by the court to defendants who are eligible to attend such

courses in lieu of paying a fine. (*Id*.) The course also allows for a defendant to avoid adverse effects of the ticket on their driving record. (*Id*.) At the hearing, Plaintiff was informed that if she successfully completed the driving course, she did not have to return to court and ASI would notify the court directly of Plaintiff's course completion. (*Id*.) Thereafter, in June 2014, Plaintiff paid the requisite fee to take the driving course and successfully completed the course at which time Plaintiff was informed by ASI that ASI would notify the court of her completion and that she was not required to return to court or otherwise verify her completion with the court. (*Id*. at 4-5.) Following Plaintiff's completion of the driving course, ASI did not notify municipal court of her completion and/or the court failed to properly record said completion resulting in an arrest warrant being issued for Plaintiff's arrest. (*Id*. at 5.)

On April 20, 2015, in response to the vehicle accident involving Plaintiff, Officer Hunter "ran a check" on Plaintiff's identify and discovered the outstanding warrant for Plaintiff's arrest. (*Id*.) Officer Hunter called for a female officer to assist him to which Officer Melissa Hollis ("Hollis") responded. (*Id*. at 6.) While on the scene of the accident, Hunter and Hollis obtained further background information on Plaintiff and were informed of a prior conviction relating to Plaintiff for an unlawful controlled substance. (*Id*.) According to Plaintiff, once the previous conviction was revealed, Hunter's and Hollis' "demeanor and attitude shifted dramatically towards plaintiff to one of being aggressive, suspect of her and accusatory." (*Id*.)

Plaintiff informed the officers that there was a mistake with the warrant because she had completed the driving course as required, but according to Plaintiff, Hunter and Hollis were only concerned with whether Plaintiff was in possession of illegal drugs. (*Id.*) Plaintiff additionally informed Hollis that she needed medical attention for her wrist (as a result of the wreck), but Hollis ignored her request. (*Id.* at 6-7.) Instead, Plaintiff was instructed to turn around, face her vehicle, place her hands on the top of the car, and spread her legs so that Hollis could perform a search. (*Id.* at 7.)

According to Plaintiff, Hollis, "without cause, probable or otherwise, and without plaintiff's permission or a search warrant, patted down plaintiff's person from top to bottom, ran her hands through plaintiff's hair and violently shook plaintiff's head and hair and then, without warning, pulled up her shirt well above her breasts and pulled out and up on her brassiere ("bra") and with her hands violently shook plaintiff's naked exposed breasts repeatedly searching for illegal drugs while the male officer Hunter and passersby looked on and in plain and open view on the roadside [...]" (*Id.*) Thereafter, Hollis searched Plaintiff's vehicle for drugs and had the vehicle impounded. (*Id.*)

Following the search of Plaintiff, Plaintiff complained to Hollis about exposing Plaintiff, to which Hollis responded that Plaintiff was going to go to jail and instructed Plaintiff to put her hands behind her to be handcuffed. (*Id.*) Plaintiff again complained to Hollis of the pain in her right wrist and arm, but Hollis grabbed Plaintiff's right arm, handcuffed Plaintiff, and placed Plaintiff in

4

the backseat of Hollis' car causing her wrist to be pressed between Plaintiff's back and the seat of the vehicle. (*Id*. at 8). Hollis then drove Plaintiff to the Metro Jail in a manner that caused further pain to Plaintiff's right wrist and arm despite Plaintiff's complaints. (*Id*.)

Upon arrival to jail, Plaintiff was again searched by an unidentified female officer in the same manner as she was previously searched by Hollis. (*Id*. at 9). Plaintiff was not intermingled with the general population at metro jail, posted $1,000.00 bond, and was released later the same day on April 20, 2015, without ever receiving medical treatment. (*Id*.) Following her release, Plaintiff sought medical care and was diagnosed with a fractured right wrist that required a cast and multiple subsequent follow up visits. (*Id*. at 10).

A couple of days after Plaintiff's arrest, ASI and the municipal court, without admitting any responsibility, resolved the court record to reflect Plaintiff's previous course completion certification with ASI. (*Id*. at 11). Upon correction, the warrant was recalled. (*Id*.)

Plaintiff, who is proceeding *pro se*, originally filed her Complaint entitled "Complaint and Request for Declaratory and Injunctive Relief" in the Circuit Court of Mobile County, Alabama on March 1, 2017, against Defendants, City of Mobile ("City"), Melissa Hollis ("Hollis"), Sam Cochran ("Cochran"), Jane Doe, and Alabama Safety Institute, Inc. ("ASI") asserting twelve claims entitled: Breach of Implied Contract/Legal Fraud/Deceit/Misrepresentation (Count I), Negligence/Wantonness (Counts II, III, and VIII), Malicious Prosecution (Count

IV), Conspiracy and Due Process (Count V), Invasion of Privacy and Negligent Supervision/Training (Count VI), Assault and Battery (Count VII), Intentional Infliction of Emotional Distress (Count IX), Unreasonable Search and Unreasonable Seizure (Count X), Deliberate Indifference/Unreasonable Seizure (Count XI), and Declaratory /Injunctive Relief (Count XII). (Doc. 1-1, generally).[1] Therein, Plaintiff demanded "judgment against defendants for compensatory damages, general and special, in the amount of NINE HUNDRED THOUSAND DOLLARS ($900,000), and punitive damages in the amount of THREE HUNDRED THOUSAND DOLLARS ($300,000), plus costs, fees and expenses" and "any other relief, including the declaratory relief and permanent injunction being sought against the sheriff". (*Id* at 32). This action was removed to this Court on April 5, 2017. (Doc. 1). On April 12, 2017, the City of Mobile filed a Motion to Dismiss Count IV of Plaintiff's Complaint (Doc. 15), to which Plaintiff responded (Doc. 21) and the City replied. (Doc. 24). On April 12, 2017, Sam Cochran filed a Motion to Dismiss and brief in support thereof (Docs. 16 and 17, respectively), to which Plaintiff responded (Doc. 22) and Cochran replied (Doc. 23).

## STANDARD OF REVIEW

---

[1] As an initial matter, it should be noted that Plaintiff's Complaint is less than sufficient in several respects. Specifically, Plaintiff does not identify with clarity which claims are being asserted against which defendants. Second, Plaintiff has coupled multiple claims under single counts i.e, Count I is entitled "Breach of Implied Contract/ Legal Fraud/ Deceit/ Misrepresentation". Third, Plaintiff has asserted claims based on separate legal grounds within one count, i.e. Count IV "Malicious Prosecution" pursuant to the common law of Alabama, the Alabama Constitution, and the U.S. Constitution. Such pleadings are not typically acceptable and under certain situations permit this Court to *sua sponte* require amendment. *See Zanaty v. Wells Fargo Bank, N.A.*, 2016 WL 6610443, *2 (N.D. Ala. Nov. 9, 2016). However, in the instant case, based on the grounds for dismissal asserted and the recommendation that Plaintiff be given an opportunity to amend at this stage on those claims where amendment may not be futile, amendment prior to resolution of the current motions to dismiss was not necessary.

To survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must first satisfy the pleading requirements of Rule 8(a)(2), which provides that "[a] pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). While Rule 8 establishes a regime of "notice pleading," *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 513-14, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002), it does not eliminate all pleading requirements.

First, the complaint must address all the elements that must be shown in order to support recovery under one or more causes of action. "At a minimum, notice pleading requires that a complaint contain inferential allegations from which we can identify each of the material elements necessary to sustain a recovery under some viable legal theory." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 960 (11th Cir. 2009) (emphasis and internal quotes omitted).

Pleading elements is necessary, but it is not enough to satisfy Rule 8(a)(2). There must, in addition, be a pleading of facts. The rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do" to satisfy that rule. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2009). The complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Id.*, at 570, 127 S.Ct. 1955. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129

S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" *Twombly*, 550 U.S. at 555, 557, 127 S. Ct. at 1965, 1966 (second brackets in original).  But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal,* 556 U.S. at 678, 129 S. Ct. at 1949.

When considering a *pro se* litigant's allegations, a court gives them a liberal construction holding them to a more lenient standard than those of an attorney. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 595-596, 30 L.Ed.2d 652 (1972). The court, however, does not have "license . . . to rewrite an otherwise deficient pleading [by a *pro se* litigant] in order to sustain an action."  *GJR Investments v. County of Escambia, Fla.,* 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by Randall v. Scott*, 610 F.3d 701, 710 (11th Cir. 2010) (relying on *Iqbal*, 556 U.S. 662, 129 S. Ct. 1937).  Furthermore, the court treats as true factual allegations, but it does not treat as true conclusory assertions or a recitation of a cause of action's elements.  *Iqbal*, 566 U.S. at 681, 129 S. Ct. at 1951.

When considering whether a complaint states a claim for relief, the Court "should assume, on a case-by-case basis, that well pleaded factual allegations are true and then determine whether they plausibly give rise to an entitlement to relief." *Randall v. Scott*, 610 F.3d 701, 710 (11th Cir. 2010).

## DISCUSSION

### I.    The City of Mobile

Count Four of Plaintiff's Complaint asserts a claim for malicious prosecution. (Doc. 1-1 at 13-14). Therein, Plaintiff asserts that ASI and the municipal court clerk, in failing to report and record Plaintiff's successful completion of the driving course caused a warrant to be issued for Plaintiff's arrest which resulted in Plaintiff being falsely detained and jailed and having to post bond of $1,000.00. (*Id.*) Plaintiff additionally asserts that as a result of the actions/inactions of ASI and the municipal court clerk, Plaintiff was forced to return to court which resulted in her warrant being recalled. (*Id.*) Lastly, Plaintiff's malicious prosecution claim states, in part, as follows:

> 65. Plaintiff avers that officer Hollis, based on the foregoing allegation, in refusing to investigate plaintiff's contention that the warrant was a mistake, and in arresting, detaining, and jailing her, knew and had reasons to know that there was no cause, probable or otherwise, for the warrant.

> 66. As a direct and proximate consequence of causing the arrest warrant to issue, plaintiff's subsequent arrest and jailing, and having to post bond to be released from jail, plaintiff was subjected to a malicious prosecution in violation of her rights protected by the Fourth Amendment as enforced against state actors under the Fourteenth Amendment of the United States Constitution and violated Section 5 of the Alabama Constitution.

> 67. As a direct and proximate consequence of causing the arrest warrant to issue and plaintiff's subsequent arrest and jailing, plaintiff was subjected to a malicious prosecution in violation of her rights protected under Alabama Law.

(*Id.*)(emphasis added).

The City asserts that, as a municipality, it is immune from an action of malicious prosecution. (Doc. 15). In response, Plaintiff concedes that Count IV does not state a valid cause of action against the City of Mobile under Alabama common law and agrees that Count IV is due to be dismissed in that regard. (Doc. 21). However, Plaintiff contends that Count IV additionally states a claim for malicious prosecution under the state and federal constitutions and, therefore, the entire count is not subject to dismissal. (*Id.*) In reply, the City argues that (1) there is no private cause of action for monetary damages based on violations of the Alabama Constitution and (2) that the lumping together of multiple claims in the same count is improper and impermissible. (Doc. 24). The undersigned will address each alleged claim in turn.

With regard to Plaintiff's alleged cause of action for malicious prosecution pursuant to Alabama common law, the parties agree that Plaintiff's count is due to be dismissed. *See Franklin v. City of Huntsville*, 670 So.2d 848, 852 (Ala.1995) ("Under Alabama law, a municipality cannot be held liable for malicious prosecution because a municipality is incapable of malice.") The undersigned agrees and recommends that Count IV be dismissed with prejudice against the City of Mobile to the extent that it states a cause of action pursuant to the common law of Alabama.

To the extent that Plaintiff has alleged a claim of malicious prosecution pursuant to the Alabama Constitution, the City of Mobile is correct that no private

action for monetary damages exists under the Alabama Constitution. *See Matthews v. Alabama A & M Univ.*, 787 So.2d 691, 698 (Ala. 2000)(Alabama Supreme Court has professed awareness of no authority "that recognizes a private cause of action for monetary damages based on violations of the provisions of the Constitution of Alabama of 1901.") Therefore, Plaintiff's claim for malicious prosecution pursuant to a violation of the Constitution of Alabama for monetary damages is also due to be dismissed with prejudice.

Lastly, to the extent that Count IV is asserting a claim under the U.S. Constitution, Plaintiff has not properly stated a claim. The Eleventh Circuit has identified malicious prosecution "as a violation of the Fourth Amendment and a viable constitutional tort cognizable under § 1983." *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003). To establish a § 1983 malicious prosecution claim, the plaintiff must prove two things:

> (1) the elements of the common law tort of malicious prosecution; and

> (2) a violation of his Fourth Amendment right to be free from unreasonable seizures.

*Grider v. City of Auburn,* 618 F.3d 1240, 1256 (11th Cir. 2010) Where a federal claim for malicious prosecution is alleged based upon a state prosecution, state law provides the essential elements. *Uboh v. Reno*, 141 F.3d 1000, 1004 (11th Cir. 1998)). In Alabama, the constituent elements of the common law tort of malicious prosecution are: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the

plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Wood*, 323 F.3d at 872, 882

Under the Fourth Amendment, an individual has a right to be free from "unreasonable" searches and seizures and an arrest of a person constitutes a seizure of that person. *Skop v. City of Atlanta*, 485 F.3d 1130, 1137 (11th Cir. 2007). Whether a seizure by an arrest was "reasonable" under the Constitution turns on a finding of probable cause, *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004), a determination made under the totality of the circumstances, *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. l998). "Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *United States v. Gonzalez*, 969 F.2d 999, 1002 (11th Cir. 1992).

Assuming that Plaintiff properly pled a § 1983 malicious prosecution claim[2], she must also plead sufficient facts asserting the same against the City. "[T]o impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

---

[2] The City of Mobile's entire argument for dismissal of Plaintiff's alleged §1983 malicious prosecution claim against it is that it is subject to dismissal because it was improperly lumped together with other claims. (Doc. 24 at 2). As a result, the undersigned will not independently analyze whether Plaintiff properly pled facts to support the elements of a §1983 malicious prosecution claim, at this time.

Count IV of Plaintiff's Complaint makes no mention of the City of Mobile directly. Rather, the facts alleged pertain to either the municipal court clerk or Officer Hollis. Thus, to impose liability, Plaintiff must plead facts to show a custom or policy existed that constituted deliberate indifference and caused the alleged violation. (*See Id*.) Count IV of Plaintiff's Complaint makes no mention of any custom or policy which ostensibly resulted in her alleged deprivation of rights. As a result, Plaintiff has not properly alleged facts to establish a claim against the City.

However, before an action is dismissed with prejudice for failure to state a claim, a *pro se* plaintiff must be given an opportunity to amend the complaint if a more carefully drafted version might state a claim. *Jemison v. Mitchell*, 380 F. App'x 904, 907 (11th Cir. 2010) (per curiam) (unpublished) (emphasis added) (citing *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991) (per curiam) ("Where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice."), *overruled in part by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (en banc) (overruling *Bank* as to counseled parties). Therefore, it is recommended that Plaintiff be given an opportunity to amend Count IV to properly state a § 1983 malicious prosecution claim upon which relief can be granted against the City. [3] It is further recommended that the City's Motion (Doc. 15) with respect to Count IV be granted

---

[3] Plaintiff is forewarned that her Amended Complaint must comply with the above analysis, the failure of which may result in the future dismissal of her claim.

as to all claims against the City of Mobile pursuant to either Alabama common law or the Alabama Constitution.[4]

## II.        Sheriff Sam Cochran

Plaintiff's Complaint identifies Sam Cochran as the sheriff of Mobile County "charged with operating the Mobile [C]ounty [M]etro [J]ail ("metro jail") and its day-to-day operations, including supervision and training". (Doc. 1-1 at 3). Cochran is being sued in his official and individual capacities. (*Id.*) Cochran's motion seeks to dismiss Counts VI, VII, IX, X, XI, and XII, all of which allege causes of action against him based on either federal or state law. (Doc. 17). More specifically, Cochran asserts that any federal claims brought against him in his official capacity seeking monetary damages are due to be dismissed based on Eleventh Amendment immunity and any state law claims brought against him either in his official or in his individual capacity seeking monetary damages are due to be dismissed on the basis of sovereign immunity. (*Id* at 4). Finally, Cochran asserts that all federal claims against him in his individual capacity are due to be dismissed based on qualified immunity and for failure to state a claim. (*Id* at 4-9). Plaintiff's response counters Cochran's arguments by asserting (1) that Eleventh Amendment Immunity has been waived, (2) that her action falls within an exception to sovereign immunity and (3) that she has properly plead all

---

[4] Amendment is not required if the same would be futile. See *Jemison*, 380 F. App'x at 907. ("[d]ismissal with prejudice is proper … if the *pro se* plaintiff has indicated that he does not wish to amend his complaint or if a more carefully drafted complaint could not state a valid claim." For the reasons set forth herein above, it is clear that Plaintiff cannot amend her pleadings to rectify these claims.

of her claims.  (Doc. 22, generally).  The undersigned will address each argument in turn.

A.    **Counts X and XI: Federal Official Capacity Claims/ Eleventh Amendment Immunity**

In Count X of Plaintiff's Complaint entitled "Unreasonable Search and Unreasonable Seizure" Plaintiff alleges that Cochran violated her Fourth Amendment rights as enforced against state actors under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983.  (Doc. 1-1 at 22-26).  Count XI entitled "Deliberate Indifference/Unreasonable Seizure" asserts that Cochran violated Plaintiff's Fourth, Fifth, and Eighth Amendment rights as enforced against state actors under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983.  (*Id.* at 26-29).  Cochran argues that any/all of the federal claims asserted by Plaintiff against Cochran in his official capacity are due to be dismissed based on Eleventh Amendment Immunity.  (Doc. 17).  Plaintiff contends that Cochran has waived any potential Eleventh Amendment Immunity he had when he voluntarily removed this case from state court to this Court.  (Doc. 22 at 2).

Plaintiff's action against Cochran in his official capacity, in reality, imposes liability on the entity Cochran represents, and not on him as an individual.  *Brandon v. Holt*, 469 U.S. 464, 471–72, 105 S.Ct. 873, 877–78, 83 L.Ed.2d 878 (1985).  The determination of the entity represented by Sheriff Cochran for purposes of determining immunity from suit under 42 U.S.C. § 1983 is determined by reference to state law.  *Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir.

1990). Alabama law holds that a sheriff is a state, rather than a county, official for purposes of immunity from suit. *Parker v. Amerson*, 519 So.2d 442 (Ala. 1987).

Put in its broadest form, the concept of sovereign immunity bars private citizens from suing states for damages. *Stroud v. McIntosh*, 722 F.3d 1294, 1297 (11th Cir. 2013) (*citing Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 751–52, 122 S.Ct. 1864, 1870, 152 L.Ed.2d 962 (2002). This immunity also shields "arms of the State" from suit. (*Id.*)(*citing N. Ins. Co. of N.Y. v. Chatham Cnty., Ga.*, 547 U.S. 189, 193, 126 S.Ct. 1689, 1693, 164 L.Ed.2d 367 (2006). It is well established that the Eleventh Amendment to the United States Constitution bars § 1983 claims in federal court against the state or an agency of the state. *Alabama v. Pugh*, 438 U.S. 781, 782, 98 S.Ct. 3057, 3057–58, 57 L.Ed.2d 1114 (1978). *See also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Furthermore, as a state officer, the sheriff is immune from suit under the Eleventh Amendment to the United States Constitution. *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990).

There is no dispute that Cochran, in his official capacity as sheriff, is an arm of the state for Eleventh Amendment Immunity purposes. The Supreme Court has recognized two ways that a private person can sue a state for damages: either (1) Congress can abrogate sovereign immunity by enacting legislation to enforce the substantive provisions of the Fourteenth Amendment, or (2) a state can waive its sovereign immunity. *See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670, 119 S.Ct. 2219, 2223, 144

L.Ed.2d 605 (1999). Plaintiff does not assert that Congress has abrogated sovereign immunity with regard to her claims. Nevertheless, in *Quern v. Jordan*, 440 U.S. 332, 341, 99 S.Ct. 1139, 1145, 59 L.Ed.2d 358 (1979), the Court concluded that Congress, in passing § 1983, did not intend to override the immunity guaranteed to the states by the Eleventh Amendment. *See also Robinson v. Georgia Dept. of Transp.*, 966 F.2d 637, 640 (11th Cir. 1992) ("Congress, in passing § 1983, did not intend to override the immunity guaranteed to the states by the Eleventh Amendment").

Plaintiff's theory for defeating Cochran's motion to dismiss is based on his alleged waiver by way of voluntarily removing this action to federal court. In support of her position, Plaintiff relies on *Lapides v. Board of Regents of the University System of Georgia*, 535 U.S. 613, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002) and *Stroud v. McIntosh*, 722 F.3d 1294, 1297 (11th Cir. 2013); however, Plaintiff's position is misplaced. As pointed out by Cochran, "[w]hile voluntary removal waives state immunity from suit in a Federal forum, the removing state retains all defenses it would have enjoyed had the matter been litigated in state court including immunity from liability. *Stroud*, 722 F.3d at 1303 *citing Lombardo v. Penn. Dep't of Pub. Welfare*, 540 U.S. at 190-198 (3rd Cir. 2008). *See also Myers, ex rel. Benzing v. Texas*, 410 F.3d 36, 255 (5th Cir. 2000)("the Constitution permits and protects a state's right to relinquish its immunity from suit while retaining its immunity from liability, or visa versa...")." (Doc. 23 at 1-2). Because Cochran could have raised an immunity defense in state court, his

voluntary removal of this action to Federal Court, while waiving his objection to a federal forum, did not waive his immunity claims as to liability. Accordingly, without a waiver, Eleventh Amendment principles operate to bar Plaintiff's § 1983 claims for money damages against Cochran in his official capacity. As a result, it is recommended that Cochran's Motion (Doc. 16) be granted with respect to Plaintiff's federal claims contained in Counts X and XI for monetary damages against Cochran in his official capacity.

## B.    Counts VI, VII, IX, X, XI, and XII: State Law Official and Individual Capacity Claims/ Sovereign Immunity

Counts VI, VII, and IX of Plaintiff's Complaint, entitled "Invasion of Privacy and Negligent Supervision/Training", "Assault and Battery", and "Intentional Infliction of Emotional Distress", respectively, all assert claims based only on state law. Counts X and XI, entitled "Unreasonable Search and Unreasonable Seizure" and "Deliberate Indifference/Unreasonable Seizure", respectively, assert claims based on federal and state law. Cochran contends that all counts based on state law are due to be dismissed against him in both his individual and official capacities based on state sovereign immunity. (Doc. 17 at 4). Plaintiff asserts that her action falls within one of the exceptions for sovereign immunity, such that dismissal should be denied. (Doc. 22 at 2).

Pursuant to Article I, Section 14 of the Alabama Constitution of 1901, "the State of Alabama shall never be made a defendant in any court of law or equity." "The wall of immunity erected by § 14 is nearly impregnable." *Ex parte Davis*, 930 So.2d 497, 500 (Ala. 2005) (citation omitted). Accordingly, courts applying

Alabama law have routinely held that sheriffs are executive officers of the State who, with few exceptions, are absolutely immune from suit on state-law claims. *See Sheth v. Webster*, 145 F.3d 1231, 1236 (11th Cir. 1998) (recognizing that "absolute sovereign immunity" is afforded to sheriffs and deputy sheriffs under Alabama law). Sovereign immunity, likewise, applies to claims brought against a sheriff in his individual capacity. *Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1430 (11th Cir. 1997) *(overruled on other grounds)*( "[u]nder Alabama law, a claim against an Alabama sheriff in his individual capacity is barred by the doctrine of sovereign immunity."); *see also McMillian v. Johnson*, 101 F.3d 1363, 1365 (11th Cir.1996) ("a claim against an Alabama sheriff in his individual capacity is barred by the doctrine of sovereign immunity," even if such claim is based on malicious or intentional wrongdoing); *Cobb v. Marshall*, 481 F.Supp.2d 1248, 1261 (M.D.Ala.2007) (holding that, where an Alabama sheriff is sued for money damages in his individual capacity for state-law claims, that defendant is fully shielded from liability by § 14 immunity).

Under Art. I, § 14, Alabama Const. 1901, the only exceptions to State immunity for State officers such as sheriffs sued in their official capacity are as follows:

> [A]ctions brought (1) to compel him to perform his duties, (2) to compel him to perform ministerial acts, (3) to enjoin him from enforcing unconstitutional laws, (4) to enjoin him from acting in bad faith, fraudulently, beyond his authority, or under mistaken interpretation of the law, or (5) to seek construction of a statute under the Declaratory Judgment Act if he is a necessary party for the construction of the statute.'

*Parker v. Amerson*, 519 So.2d 442 (Ala.1987).  Plaintiff urges that her state law claims against Cochran fall within one of the enumerated exceptions negating immunity.  More specifically, Plaintiff asserts "[t]he exception - to enjoin him from acting in bad faith, fraudulently, beyond his authority, *or under mistaken interpretation of the law* - applies in this case."  (Doc. 22 at 2).   In support of her position, Plaintiff points to paragraph 36 of her Complaint wherein she states that the search conducted by Jane Doe at the jail "was done with malice, beyond her authority, based on an erroneous interpretation of the law…"  (Doc. 1-1 at 9).  However, even considering Plaintiff's argument that an action to enjoin the sheriff falls within one of the exceptions to state immunity, Counts VI, VII, IX, and Counts X and XI (as they are asserted pursuant to state law), to the extent that they seek *monetary damages* and not injunctive relief, still do not fall within one of the exceptions to state immunity.  As such, Plaintiff has not presented any facts in her Complaint which establish that Cochran is not entitled to sovereign immunity in both his official and individual capacity with regard to Plaintiff's state law claims for monetary damages in Counts VI, VII, IX, X, and XI.   As a result, it is recommended that Cochran's Motion (Doc. 16) be granted with respect to all state claims for monetary damages based on sovereign immunity. [5]

---

[5] To the extent that Plaintiff is alleging that all of these counts, and Count XII (which clearly seeks declaratory and injunctive relief pursuant to the both the U.S. Constitution and the Alabama Constitution) seek only to enjoin Cochran, the same will be addressed separately herein below.

### C.    Counts X and XI: Federal Individual Capacity Claims/Qualified Immunity

As previously discussed, Count X of Plaintiff's Complaint entitled "Unreasonable Search and Unreasonable Seizure" Plaintiff alleges that Cochran violated her Fourth Amendment rights as enforced against state actors under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983. (Doc. 1-1 at 22-26). Count XI entitled "Deliberate Indifference/Unreasonable Seizure" asserts that Cochran violated Plaintiff's Fourth, Fifth, and Eighth Amendment rights as enforced against state actors under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983. (*Id*. at 26-29). Cochran asserts all of Plaintiff's federal claims are due to be dismissed based on qualified immunity. Plaintiff responds that she has properly asserted facts to show that Cochran is not entitled to qualified immunity with regard to each asserted constitutional violation. More specifically, Plaintiff argues (1) she has properly stated a Fourth Amendment claim because she stated facts which show that the manner in which her search was performed was unreasonable, (2) she has properly stated a Eighth Amendment claim because she stated facts which show that "Jane Doe's sadistic and violent molesting of the plaintiff's naked breasts was done maliciously to intimidate and belittle her", and (3) she has properly stated a Fourteenth Amendment claim because she stated facts which show that "the pat-down and the arbitrary forced physical exposure

and violent shaking of her naked breasts by Jane Doe [was] alleged to be part of the jail's policy, custom and practice." (*Id.*) [6]

Qualified immunity offers complete protection for individual government officials performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009). A party is eligible to claim qualified immunity if he was acting within the line and scope of his employment. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004). There is no dispute that Cochran's alleged actions were performed within the line and scope of his employment. (Doc 22 at 3)("Plaintiff's argument here assumes that the sheriff was acting within his "discretionary authority.").

The Supreme Court has mandated a two-step analysis for resolving qualified immunity claims. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001). First, a court must decide whether the facts that a plaintiff

---

[6] Plaintiff's Complaint makes reference to the Fifth Amendment in several counts, but Plaintiff's response does not argue any Fifth Amendment violations. However, based on the motion before this Court and for the reasons set forth herein, an analysis of each of the alleged constitutional violations is not warranted, because even assuming Plaintiff has properly pled a violation of a constitutional right which was clearly established, she has not stated a claim with regard to those rights against Sheriff Cochran.

has alleged "show the [defendant's] conduct violated a constitutional right." *Id*. Second, the court must decide "whether the right was clearly established." *Id*. However, based on the Complaint, it is apparent that all of Plaintiff's claims with respect to Cochran relate to Cochran's role as a supervisor of Officer Doe and of the Mobile County Jail and a supervisor cannot be liable for a constitutional violation solely on the basis of respondeat superior or vicarious liability. *Belcher v. City of Foley*, 30 F.3d 1390, 1396–97 (11th Cir. 1994); *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990). Rather, supervisor liability occurs only when the supervisor either personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation. *Brown*, 906 F.2d at 671.

As a result, even assuming that Plaintiff has properly plead a violation of her Fourth, Fifth, Eighth, and/or Fourteenth Amendment rights under *Katz*, i.e. that she suffered a violation of her constitutional rights which was clearly established, Plaintiff must still plead facts showing that Cochran should be liable for those alleged violations.[7]

---

[7] Typically, this Court would consider the whether Plaintiff has properly stated a claim under *Katz*, before turning to a discussion of whether a supervisor can be held liable for the alleged constitutional deprivations. However, the only motion before this Court with regard to the constitutional violations is a motion filed by Cochran. Thus, because Plaintiff failed to plead sufficient facts to establish a causal connection between the alleged deprivations and Cochran, a more in depth analysis of whether Plaintiff's factual allegations are sufficient under *Katz* is not contained herein. Moreover, because the undersigned is recommending that amendment be allowed prior to dismissal, a discussion of whether Plaintiff has properly pled a deprivation of a clearly established constitutional right (even if she has failed to do so) would not result in a different outcome at this juncture. However, Plaintiff is cautioned that her amended Complaint must satisfy the pleading requirements discussed herein both with regard to *Katz* and supervisory liability, the failure of *either* may result in the ultimate dismissal of her claim(s).

Plaintiff's Complaint does not assert that Cochran personally participated in any of the alleged constitutional violations.   Therefore, in order to maintain an action against Cochran, Plaintiff must present facts which show a causal connection between Cochran and the alleged deprivations.   *Brown*, 906 F.2d at 671.  There are three ways such a connection may be shown.  *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). First, a causal connection may be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." *Braddy v. Fla. Dep't of Labor and Employment Sec.*, 133 F.3d 797, 802 (11th Cir. 1998). To be sufficient to notify the supervising official, these deprivations must be "obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999).   Next, the causal connection can be established "when a supervisor's custom or policy ... result[s] in deliberate indifference to constitutional rights." Cottone, 326 F.3d at 1360-61.   To demonstrate either a policy or custom, the plaintiff must show "a persistent and wide-spread practice." *Depew v. City of St. Mary's, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986). Finally, the causal connection can be established "when facts support an inference that the supervisor directed the subordinated to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id*.

Plaintiff's Complaint fails to assert facts to establish causal connection between the alleged constitutional violations and Cochran.  First, Plaintiff makes

no assertion and presents no facts that there is a history of widespread abuse that did or should have put Cochran on notice of the need to correct an alleged deprivation. See *Braddy*, 133 F.3d at 802. Further, Plaintiff's Complaint insufficiently relies solely on her personal isolated experience to establish notice. *Hartley,* 193 F.3d at 1269. Next, Plaintiff's Complaint asserts in a conclusory manner, without presenting any supporting factual details that Cochran's custom and policies – whatever they may be- resulted in deliberate indifference to her constitutional rights. Such assertions do not give rise to a plausible cause of action. *Iqbal*, 556 U.S. 678-79. While Plaintiff argues that it was the manner in which the search was performed that caused her alleged deprivation, there are no facts that causally link the manner of Jane Doe's search to any specific policy. Moreover, the Complaint fails to present facts showing a persistent or widespread practice of conducting the search in the manner that Plaintiff alleges was unconstitutional. See *Depew,* 787 F.2d at 1499. Lastly, Plaintiff's Complaint offers no facts to suggest that Cochran directed Officer Doe to act in the manner that she did or that he knew that she would act unlawfully and failed to stop her. *See Id*.

The sum total of the facts presented in Plaintiff's Complaint which purportedly establish a causal connection against Cochran are described by Plaintiff in her response as follows:

> A fair reading of the complaint reveals that physical pat-down and removal of the brassiere and physical searching of female breasts were part of the jail facility's policy and custom for which Sheriff Cochran was responsible for promulgating. But for that policy and custom, there would have been no

constitutional violation. Consequently, there is a causal connection between the policy and custom for which Sheriff Cochran was directly responsible for promulgating and the violations of plaintiff's constitutional rights. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1308 (11th Cir. 2009). Certainly, plaintiff was not the only female detainee or prisoner in the jail facility who, under that same policy and custom, was subjected to a similar physical search of her naked breasts by the sheriffs subordinates. There is, however, enough factual matter alleged in the complaint to justify permitting plaintiff to pursue discovery on the jail's policy and its application to the other female detainees and prisoners who went through the jail's intake process.

(Doc. 22 at 5-6). At most, Plaintiff, in her Complaint, has alleged a policy exists to search female arrestees entering the jail that involved, in part, a pat down, bra removal, and search of female breasts. Plaintiff does not identify or explain the policy in any way. Moreover, to establish a policy exists, Plaintiff asserts that her experience *must not* be an isolated event. Even if such an assertion were found in the Complaint, which it is not, Plaintiff's conclusory assumption is not a fact which supports a valid claim. *Iqbal*, 556 U.S. 662. Therefore, as it is, Plaintiff's Complaint fails to state a viable claim against Cochran pursuant to § 1983 in his individual capacity based on a policy or custom.

Plaintiff alternatively asserts that Cochran is liable for failure to adequately train. Under § 1983, a supervisor can be held liable for failing to train his or her employees "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [officers] come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989); *see also Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1397 (11th Cir. 1994) ("A supervisory official is not liable under section 1983 for an injury resulting from his failure to train subordinates unless his failure to train amounts

to deliberate indifference to the rights of persons with whom the subordinates come into contact and the failure has actually caused the injury of which the plaintiff complains." (internal quotation marks omitted)). Thus, a plaintiff alleging a constitutional violation premised on a failure to train must demonstrate that the supervisor had "actual or constructive notice that a particular omission in their training program causes [his or her] employees to violate citizens' constitutional rights," and that armed with that knowledge the supervisor chose to retain that training program. *Connick v. Thompson*, 563 U.S. 51, 61, 131 S.Ct. 1350, 1360, 179 L.Ed.2d 417 (2011).

Plaintiff's Complaint while asserting, again in a conclusory manner, that Cochran failed to adequately train Officer Doe, provided no facts to support such a conclusion.  More specifically, Plaintiff failed to plead facts showing what training was provided or how/why the training was inadequate.  Plaintiff, likewise, failed to present any facts establishing notice, actual or constructive, of the inadequacies Plaintiff refers to, whatever they may be.  Therefore, similar to Plaintiff's § 1983 claims against Cochran based on a policy or custom, Plaintiff's § 1983 claims against Cochran based on his alleged failure to train employees, equally fails to state a claim.

Despite Plaintiff's assertions to the contrary, for the reasons set forth above, Plaintiff's Complaint fails to establish the requisite causal connection between Cochran and the alleged constitutional violations such that Cochran would not be entitled to qualified immunity with regard to the alleged violations of the

Plaintiff's Fourth, Fifth, Eighth, and Fourteenth Amendment rights. Therefore, Plaintiff's claims against Cochran in his individual capacity for the alleged constitutional violations are due to be dismissed based on qualified immunity.

However, in response to Cochran's request for dismissal of Plaintiff's § 1983 claims against him in his individual capacity, Plaintiff points out "that this case originated in the state court and therein was not subject to the federal rules of civil procedure"; a fair point. For this reason, and because as previously indicated, this Court is not inclined to dismiss a *pro se* Plaintiff's claims for failure to state a claim pursuant to Rule 12(b)(6) without first allowing Plaintiff to amend, it is recommended that Plaintiff be given one opportunity to Amend Counts X and XI of her Complaint to state viable claims against Cochran in his individual capacity.[8]

### D.    Count XII: Declarative/Injunctive Relief

Count XII request that this Court declare the custom and policy of strip searching all detainees entering the jail, irrespective of the reason for an arrest, unconstitutional under state and federal law and seeks to enjoin the sheriff from continuing to perform such searches. (Doc. 1-1 at 31). The entirety of Count XII of Plaintiff's Complaint states as follows:

> 133.    Plaintiff avers that, based on the foregoing allegations, the sheriff's policies, customs and practices at metro jail to strip search all arrestees and detainees (specifically those arrested for non-misdemeanor and minor traffic offenses) upon their arrival at the jail facility, irrespective of the underlying reasons for the arrestees and detainees being there, should be declared unconstitutional under the Fourth Amendment as enforced

---

[8] Again, Plaintiff is warned that her failure to adequately plead her claims may result in a future dismissal of the subject counts.

against state actors under the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. – 1983, and under Section 5 of the Alabama Constitution.

134.    Plaintiff avers the, based on the foregoing allegations, the sheriff's policies, customs and practices at metro jail to strip search all arrestees and detainees (specifically those arrested for non-misdemeanor and minor traffic offenses) upon their arrival at the jail facility, irrespective of the underlying reasons for the arrestees and detainees being there, should be permanently enjoined as unconstitutional under the Fourth Amendment as enforced against state actors under the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. – 1983, and under Section 5 of the Alabama Constitution.

(Doc. 1-1 at 31).  Defendant Cochran asserts this Count is due to be dismissed in its entirety for two reasons: (1) because the "The U.S. Supreme Court and the Eleventh Circuit have held that strip searches, including body cavity inspections, are not a violation of an inmate's Fourth Amendment rights when they are conducted after a contact visit or upon the inmate's entry into the facility. *Bell v. Wolfish*, 441 U.S. 520, 558 (1979); *Powell v. Barnett*, 541 F.3d 1298, 1314 (11th Cir. 2008) (en banc)" (Doc. 17 at 8) and (2) because "Scott lacks standing to bring either a declaratory action or an injunction against Sheriff Cochran, either under state or federal law"  (Doc. 23 at 2).[9]  Plaintiff responds that the "[n]either case [cited by Cochran] is on point because they both involved "visual" searches. For the reasons already noted above, that blanket policy and custom fouls constitutional standard and norms. Again, plaintiff should be permitted to engage

---

[9] Cochran did not raise the issue of standing in his Motion to Dismiss (Docs. 16 and 17).  However, the issue is still properly before this Court because it is jurisdictional in nature and can be raised at anytime.  *See Church v. City of Huntsville*, 30 F.3d 1332, 1336 (11th Cir. 1994) ("Because standing is jurisdictional, the City's failure to raise the issue does not bar our consideration of it here.") (*citing FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231, 110 S.Ct. 596, 607, 107 L.Ed.2d 603 (1990).

in discovery regarding the full scope of the policy and custom." (Doc. 22 at 6). Thus, Plaintiff's response suggests that only physical or non-visual searches, like the one she experienced, are unconstitutional, although, no such distinction is made within Count XII.

Because the issue of standing is potentially dispositive of Count XII, the undersigned will address that issue first. In order to seek declaratory or injunctive relief, a plaintiff must have standing. Standing presents a threshold jurisdictional question of whether a court may consider the merits of a dispute. *See Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005) ("In the absence of standing, a court is not free to opine in an advisory capacity about the merits of a plaintiff's claims.") The standing inquiry "requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Allen v. Wright*, 468 U.S. 737, 752, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)). *Warth v. Seldin*, 422 U.S. 490, 518, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) ("It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers."). With regard to federal law,

> [A] prayer for for injunctive and declaratory relief requires an assessment of whether the plaintiff has sufficiently shown a real and immediate threat of future harm. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (where a plaintiff seeks prospective relief, he must demonstrate a "real and immediate threat" of future injury); Cone Corp., 921 F.2d at 1203 (same); *Johnson v. Bd. of Regents*, 263 F.3d 1234, 1265 (11th Cir. 2001) (same); *Wooden v. Bd. of Regents*, 247 F.3d 1262, 1284 (11th Cir. 2001) (same). The binding precedent in this circuit is clear that

for an injury to suffice for prospective relief, it must be imminent. *Bowen v. First Family Fin. Servs.*, 233 F.3d 1331, 1340 (11th Cir. 2000) (observing that a "perhaps or maybe chance" of an injury occurring is not enough for standing). Because of the inquiry's focus on wholly prospective conduct, it follows that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *Lyons*, 461 U.S. at 102, 103 S.Ct. 1660 (*quoting O'Shea v. Littleton*, 414 U.S. 488, 495–96, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)).

*Elend v. Basham*, 471 F.3d 1199, 1207-08 (11th Cir. 2006).[10] "When standing is questioned at the pleading stage, as it is here, 'general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim.' We accept as true all material allegations contained in the complaint and construe the complaint in a light most favorable to the complaining party. " (*Id*. at 1208)(citation omitted).

Plaintiff's Complaint alleges multiple violations of state and federal law, but all of those alleged violations occurred in the past. Plaintiff has not alleged any ongoing, continuous, or future harm at the hands of Sheriff Cochran. Likewise, Plaintiff has failed to allege any threat of future harm. Therefore, this Court does not have standing to consider the merits of Plaintiff's claims and Count

---

[10] "The requirement is similar for a plaintiff seeking a remedy under Alabama's Declaratory Judgment Act, which gives courts the 'power to declare rights, status, and other legal relations.' Ala.Code § 6-6-222. The Alabama Supreme Court has held that in cases 'in which a cause of action has already accrued, a court will not enter a declaratory judgment if there is not an anticipated future injury.' *Carrell v. Masonite Corp.*, 775 So.2d 121, 125 (Ala. 2000)." *Barnette v. Phenix City, Alabama*, 2006 WL 680595, *10 (M.D. Ala. March 15, 2006).

XII is due to be dismissed.[11]  As a result, it is recommended that Cochran's Motion (Doc. 16) be granted with respect to Count XII.

## CONCLUSION

For the reasons set forth herein above, it is recommended that the City of Mobile's and Sheriff Cochran's Motions to Dismiss be granted in part and denied in part as follows:

1)   Granted as to the City of Mobile's Motion with respect to Count IV pursuant to Alabama common law or the Alabama Constitution.

2)   Denied as to City of Mobile's Motion with respect to Count IV pursuant to 42 U.S.C § 1983.

3)   Granted as to Cochran's Motion to Dismiss Counts X and Count XI against Cochran in his official capacity.

4)   Granted as to Cochran's Motion to Dismiss with regard to all state claims asserted in Counts VI, VII, IX, X, and XI against Cochran in his official and individual capacity.

5)   Denied as to Cochran's Motion to Dismiss Counts X and Count XI against Cochran in his individual capacity.

6)   Granted as to Cochran's Motion to dismiss Count XII.

---

[11] Plaintiff's lack of standing to enjoin Cochran defeats Plaintiff's argument that her state law claims against Cochran should not be dismissed because of an exception to immunity, i.e. to enjoin Cochran based on a misinterpretation of law, discussed herein above at paragraph B.  As such, all of Plaintiff's state law claims against Cochran whether they seek monetary damages or injunctive relief are due to be dismissed with prejudice.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. ALA. L.R. 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

DONE this 5th day of July 2017.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**