IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ANGELA SCOTT,            ) | |
|     Plaintiff,           ) | |
|                          ) | |
| v.                       ) | Civil Action No. 17-143-CG-N |
|                          ) | |
| CITY OF MOBILE, *et al.*,) | |
|     Defendants.          ) | |

**REPORT AND RECOMMENDATION**

This matter is before the Court on Defendant Sheriff Sam Cochran's ("Cochran") Motion to Dismiss (Doc. 42), Plaintiff Angela Scott's ("Plaintiff") Response in Opposition (Doc. 50), and Cochran's Reply (Doc. 52). The pending motion was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4). After careful consideration of the record, it is **RECOMMENDED** that Cochran's Motion to Dismiss be **GRANTED**, and that the remaining claims against him be **DISMISSED**.

**BACKGROUND**

On April 20, 2015, Plaintiff was pulled over for a traffic violation by officers from the City of Mobile Police Department. Officers determined that there was an active warrant for Plaintiff's arrest. As a result, she was arrested, searched, and transported to Mobile County Metro Jail ("Metro"). Plaintiff has filed 42 U.S.C. § 1983 action against a number of Defendants, including members of the City of Mobile

1

Police Department, the City of Mobile, Alabama, Mobile County Sheriff Sam Cochran, and the Alabama Safety Institute.

On July 28, 2017, the district court adopted the undersigned's Report and Recommendation, and granted the City of Mobile and Cochran's motions to dismiss in part. The Court permitted *pro se* Plaintiff to file an amended complaint with regard to some of her claims, and she has done so. (Docs. 33, 38, 40).

Counts X and XI remain pending against Cochran. In Count X of Plaintiff's Amended Complaint entitled "Unreasonable Search and Unreasonable Seizure" Plaintiff alleges that Cochran violated her Fourth Amendment rights as enforced against state actors under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983. (Doc. 40 at 23-26). Count XI entitled "Deliberate Indifference/Unreasonable Seizure" asserts that Cochran violated Plaintiff's Fourth and Eighth Amendment[1] rights as enforced against state actors under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983. (*Id*. at 26-30). Cochran has moved to dismiss both counts pursuant to Rule 12(b)(6), on the basis of qualified immunity. (Doc. 42).

---

[1] Though Count XI references the Fifth Amendment, Plaintiff has conceded her Fifth Amendment claim, and withdrawn it. (Doc. 50 at 1)("…[P]laintiff agrees with Sheriff Cochran's contention that the Fifth Amendment only applies to the federal government and hereby withdraws that claim against him."). The Court acknowledges that Federal Rule of Civil Procedure 41(a) governs voluntary dismissals of actions by a plaintiff. "Rule 41 allows a plaintiff to dismiss all of his claims against a particular defendant; its text does not permit plaintiffs to pick and choose, dismissing only particular claims within an action. "A plaintiff wishing to eliminate particular claims or issues from the action should amend the complaint under Rule 15(a) rather than dismiss under Rule 41(a)." *Klay v. United Healthgroup, Inc.,* 376 F.3d 1092, 1106 (11th Cir.2004) (quoting 8 Moore's Federal Practice § 41 .21[2], at 41–32). *Accord Campbell v. Altec Indus., Inc.,* 605 F.3d 839, 841 n. 1 (11th Cir.2010). However, given that the undersigned recommends dismissal of all claims against Cochran, ordering Plaintiff to file another amended complaint solely for this purpose would be futile.

Though many of Plaintiff's allegations arise out of her initial traffic stop, arrest, and transport to Metro. For purposes of the instant motion, the Court will detail only the conduct alleged against Cochran and his alleged supervisee, Jane Doe, which took place after Plaintiff's arrival at Metro. Plaintiff's Amended Complaint alleges the following:

> That upon arrival at metro jail plaintiff's person was searched…by Jane Doe who, acting on behalf of the sheriff in the course and scope of her employment and without cause, probable or otherwise, and without plaintiff's permission or a search warrant, ran her hands through plaintiff's hair, and then performed a pat-down of her and pulled up her shirt and performed a hand search of her breast area for illegal drugs by pulling her bra out and up and violently shaking her breasts, all of which was done with malice, beyond her authority, based on an erroneous interpretation of the law and pursuant to the sheriff's polices, customs and practices of routinely strip searching every arrestee or detainee upon their arrival at the jail facility.

(Doc. 40 at 7-8). Plaintiff alleges that she was previously searched in a similar manner on eight previous occasions after she arrived at Metro as an arrestee. (*Id*. at 8, ¶37). The Amended Complaint also alleges that she was searched in an intake area without any privacy, where male and female arrestees, inmates, and jail employees could see her. (Doc. 40 at 8, ¶ 38). She also refers to the manner in which she was searched as a "strip search." (*Id*.). Plaintiff alleges that the manner in which she was searched has been Cochran and Metro's policy since 2002. (Doc. 40 at 9, ¶ 40).

## **STANDARD OF REVIEW**

When considering a Rule 12(b)(6) motion to dismiss, the Court must accept as true the allegations set forth in the complaint drawing all reasonable inferences in the light most favorable to the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

555–56 (2007). Even so, a complaint offering mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. *Ashcroft v. Iqbal,* 556 U.S 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 555); *accord Fin. Sec. Assurance, Inc. v. Stephens, Inc.,* 500 F.3d 1276, 1282-83 (11th Cir. 2007). Further, the complaint must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 570). Put another way, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. This so-called "plausibility standard" is not akin to a probability requirement; rather, the plaintiff must allege sufficient facts such that it is reasonable to expect that discovery will lead to evidence supporting the claim. Id.

## ANALYSIS

The Sheriff has asserted the defense of qualified immunity as to the claims in Counts X and XI. The United States Supreme Court "has repeatedly stressed the importance of resolving qualified immunity questions at the earliest possible stage in litigation." *Bloom v. Alvereze,* 498 F. App'x. 867, 878 (11th Cir. 2012) (citing *Pearson v. Callahan,* 555 U.S. 223, 232 (2009)). While qualified immunity is typically addressed at summary judgment, it may be raised on a motion to dismiss and granted if the plaintiff's complaint fails to allege the violation of a clearly established constitutional right. *St. George v. Pinellas Cty.,* 285 F.3d 1334, 1337 (11th Cir. 2002); *Marsh v. Butler Cty.,* 268 F.3d 1014, 1023 (11th Cir. 2001) (en banc) ("We apply the qualified immunity defense to dismiss a complaint at the 12(b)(6) stage where, (1)

4

from the face of the complaint, (2) we must conclude that (even if a claim is otherwise sufficiently stated), (3) the law supporting the existence of that claim—given the alleged circumstances—was not already clearly established, (4) to prohibit what the government-official defendant is alleged to have done, (5) before the defendant acted."). "At the motion to dismiss stage in the litigation, the qualified immunity inquiry and the Rule 12(b)(6) standard become intertwined. Whether a particular complaint sufficiently alleges a clearly established violation of law cannot be decided in isolation from the facts pleaded." *Keating v. City of Miami*, 598 F.3d 753, 760 (11th Cir. 2010)(internal quotations omitted)(citing *Ashcroft v. Iqbal,* 556 U.S. 662 (2009) and *GJR Invs., Inc. v. County of Escambia,* 132 F.3d 1359, 1366 (11th Cir.1998).

### A.   Count X: Unreasonable Search

The Supreme Court has mandated a two-step analysis for resolving qualified immunity claims. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). First, a court must decide whether the facts that a plaintiff has alleged "show the [defendant's] conduct violated a constitutional right." *Id*. Second, the court must decide "whether the right was clearly established." *Id*. The lower courts have discretion whether to address first the existence of a constitutional violation or the clearly established nature of the right allegedly violated. *Pearson v. Callahan,* 555 U.S. 223, 236 (2009); *accord Reichle v. Howards,* 132 S. Ct. 2088, 2093 (2012).

The Court begins by examining whether Plaintiff has presented a plausible claim for a Fourth Amendment violation resulting from an unreasonable search under the first *Katz* prong and Rule 12(b)(6). In the Amended Complaint, Plaintiff

describes the search, performed by Jane Doe, upon Plaintiff's arrival at Metro as follows: "[Jane Doe] ran her hands through plaintiff's hair, and then performed a pat-down of her and pulled up her shirt and performed a hand search of her breast area for illegal drugs by pulling her bra out and up and violently shaking her breasts…" (Doc 40 at 7-8, ¶36). Plaintiff further alleges, "That the intake area within metro jail wherein these searches occurred provided no privacy and was open and in plain view of male and female arrestees/inmates who were located in adjacent areas separated only by clear glass windows and doors; and that all parts of the intake area is in plain view of the intake desk that was manned by male and female officers each time plaintiff was strip searched[2]; and that the male officers manning the desk have the opportunity to observe and do observe females, including observing plaintiff each time, being strip searched in the intake area.". (Doc. 40 at 8, ¶ 38). Based on these allegations, Plaintiff alleges that Jane Doe, an employee of the Mobile County Sheriff's Department, conducted an unreasonable search of Plaintiff's person in two different ways. First, there is an allegation that the search was unreasonable due to Plaintiff's exposure to view from members of the opposite sex. Second, there is an

---

[2] While the Amended Complaint repeatedly refers to the search at Metro as a "strip search," Plaintiff does not allege that she was forced to remove all clothing or that she was subjected to a cavity search. As the United States Supreme Court has observed,

> The term [strip search] is imprecise. It may refer simply to the instruction to remove clothing while an officer observes from a distance of, say, five feet or more; it may mean a visual inspection from a closer, more uncomfortable distance; it may include directing detainees to shake their heads or to run their hands through their hair to dislodge what might be hidden there; or it may involve instructions to raise arms, to display foot insteps, to expose the back of the ears, to move or spread the buttocks or genital areas, or to cough in a squatting position.

*Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 325 (2012).

6

allegation that the search was unreasonable due to the manner in which Plaintiff alleges she was "violently shak[en]."

The reasonableness of a search is determined by "balancing of the need for the particular search against the invasion of personal rights that the search entails." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). "In balancing those interests there are four factors courts must consider: 'the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Powell v. Barrett*, 541 F.3d 1298, 1305 (11th Cir. 2008) (*en banc*) (quoting *Bell*, 441 U.S. at 569). *Powell v. Barrett* involved a § 1983 challenge brought by pretrial detainees. 541 F.3d 1298, 1314 (11th Cir. 2008). In *Powell*, the Eleventh Circuit held:

> … [A]ssuming that arrestees being booked into a jail or detention facility retain some Fourth Amendment rights, *see Bell*, 441 U.S. at 558, 99 S.Ct. at 1884, those rights are not violated by a policy or practice of strip searching each one of them as part of the booking process, provided that the searches are no more intrusive on privacy interests than those upheld in the *Bell* case. We also assume, of course, that the searches are not conducted in an abusive manner.

*Powell v. Barrett*, 541 F.3d 1298, 1314 (11th Cir. 2008).[3] A footnote to this portion of Powell stated, "…We do note, without endorsement or criticism, that one of our decisions concludes that jail inmates retain a right to bodily privacy that implicates

---

[3] "The bottom line of the *Bell* decision is that, after '[b]alancing the significant and legitimate security interests of the institution against the privacy interests of the inmates,' the Supreme Court concluded that the visual body cavity inspections—the most intrusive part of the strip searches in that case— were reasonable under the Fourth Amendment. *Id.* at 559–60, 99 S.Ct. at 1884–85. The policy the Court upheld required that searches be conducted on every inmate after each contact visit, even without the slightest cause to suspect that the inmate was concealing contraband. *Id.* at 558, 99 S.Ct. at 1884." *Powell v. Barrett*, 541 F.3d 1298, 1306 (11th Cir. 2008).

the Fourth Amendment. *See Fortner v. Thomas*, 983 F.2d 1024, 1026 (11th Cir.1993) ('As a matter of first impression in this circuit, we hold that a prisoner retains a constitutional right to bodily privacy.')."

With regard to Plaintiff's claim that the search was unreasonable because her breasts were exposed to members of the opposite sex, the Eleventh Circuit has held:

> We joined other circuits recognizing a prisoner's constitutional right to bodily privacy in *Fortner v. Thomas,* 983 F.2d 1024 (11th Cir.1993). In *Fortner,* "female officers ... solicit[ed] ... [male prisoners] to masturbate and otherwise exhibit their genitals for the female officers' viewing." *Id.* at 1027. We held that this violated the prisoner's right to privacy. *Id.* at 1030. *Fortner* outlined a very narrow privacy right involving people's " 'special sense of privacy in their genitals'" and noted that " 'involuntary exposure of them in the presence of people of the other sex may be especially demeaning and humiliating.' " *Id.* (citing *Lee v. Downs,* 641 F.2d 1117, 1119 (4th Cir.1981)). We have reaffirmed the privacy rights of prisoners emphasizing the harm of compelled nudity. *See Padgett v. Donald,* 401 F.3d 1273, 1281 (11th Cir.2005). Nonetheless, we "continue to approach the scope of the privacy right on a case-by-case basis." *Fortner,* 983 F.2d at 1030.

*Boxer X v. Harris*, 437 F.3d 1107, 1110–11 (11th Cir. 2006). The undersigned acknowledges that the conduct alleged in *Fortner* is far more severe than that alleged here. Nonetheless, considering this precedent along with *Powell,* as applied to Plaintiff's allegations, while the search was likely justified given the security concerns surrounding jails, because Plaintiff alleges that her bare breasts were exposed to members of the opposite sex[4], the Court finds that she may have presented

---

[4] The Eleventh Circuit has also "note[d], without endorsement or criticism, that [*Fortner*] concludes that jail inmates retain a right to bodily privacy that implicates the Fourth Amendment." *Powell v. Barrett,* 541 F.3d 1298, 1314 n.7 (11th Cir. 2008) (en banc). The Court acknowledges that a different standard may apply with regard to exposure in front of corrections officers versus exposure to other inmates. *See e.g. Rashid v. Burks*, No. 1:12-CV-140 WLS, 2013 WL 6231392, at *2 (M.D. Ga. Oct. 15, 2013), report and recommendation adopted in part, rejected in part, No. 1:12-CV-140 WLS, 2013 WL 6145331 (M.D. Ga. Nov. 21, 2013)("Such a search does not violate a prisoner's right to bodily privacy, as allowing female officers unrestricted access to areas where such searches may take place is

a plausible Fourth Amendment claim. However, the Court is hesitant to conclude that Plaintiff's allegation regarding the shaking of her breasts and search of her bra rises to the level of a Fourth Amendment violation, as searching within a pretrial detainee's undergarments is reasonably related to the discovery of contraband or weapons which may harm the detainee, other inmates, or prison officials. *See* e.g. *Fortner*, 983 F.2d at 1030 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)("When a prison regulation or policy 'impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.' ").

However, even assuming both allegations rise to the level of plausible Fourth Amendment claims, the Court is left "…with the task of deciding whether [Cochran's] supervisory actions caused the alleged deprivations of [Plaintiff's constitutional] rights." *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003). All of Plaintiff's claims with respect to Sheriff Cochran relate to Cochran's role as a supervisor of Jane Doe, who allegedly performed the search of Plaintiff's person. "Supervisory officials are not liable under section 1983 on the basis of *respondeat superior* or vicarious liability." *Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1396 (11th Cir. 1994) (quotation omitted). Under § 1983, liability attaches to a supervisor only if the supervisor personally participated in the events, or if there is a causal connection between the

---

'reasonably related to valid penological goals'. *Smith v. Boyd,* 2012 WL 3230646 *5 (M.D.Ala. July 5, 2012) (presence of female officer in the area during a strip search of male inmate performed by male officers was not a violation of inmate's right to privacy); *Hoover v. Freeman,* 2013 WL 5352911 (M.D.Ala. Sept. 24, 2013) (female prisoner plaintiff did not adequately allege a violation of her right to bodily privacy based on viewing by male officers, as there was no allegation of inappropriate behavior by prison officials, and plaintiff at one point chose to remain naked)."

action of the supervising official and the alleged constitutional deprivation. *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990). "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Cottone v. Jenne*, 326 F.3d 1352, 1360–61 (11th Cir. 2003)(internal quotations and citations omitted).

Plaintiff's Amended Complaint does not assert that Cochran personally participated in any of the alleged constitutional violations. Therefore, in order to maintain an action against Cochran, Plaintiff must present facts showing a causal connection between Cochran's actions and the alleged deprivations. *Brown*, 906 F.2d at 671. The Court's July 5, 2017 Report and Recommendation (Doc. 33) advised Plaintiff of the pleading deficiencies with regard to establishing a causal connection between Cochran and the alleged violations in Counts X and XI. Plaintiff's Amended Complaint added six new paragraphs relevant to Count X. (Doc. 40 at 8-9, ¶¶ 37-41, 86). However, Plaintiff's Amended Complaint still fails to allege facts showing Cochran should be held liable under § 1983, as Jane Doe's supervisor.

There are three ways the required causal connection may be shown. *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). First, a causal connection may be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." *Braddy v. Fla. Dep't of Labor and Employment Sec.*, 133 F.3d 797, 802 (11th Cir. 1998). To be sufficient to notify the supervising official, these deprivations must be "obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences." *Hartley v. Parnell*, 193 F.3d

1263, 1269 (11th Cir. 1999). Plaintiff identifies eight occasions on which she went through the intake proceedings at Metro after an arrest. (Doc. 40 at 8, ¶37). She claims she was searched in a similar manner to that alleged in the Amended Complaint. Id. at ¶¶ 37-38). The events alleged were isolated occurrences and Plaintiff makes no allegation that she reported the alleged abuses to any officials at the jail, Sheriff's Office, or anywhere else. Further, four out of eight of the allegedly similar searches occurred prior to 2006, before Cochran took office. (*Id*.; (Doc. 52 at 6). Plaintiff has failed to allege anything that would have put Cochran on notice of any widespread abuse or constitutional violations. Thus, Plaintiff has failed to establish a causal connection by alleging facts showing a history of widespread abused that put Cochran on notice of the alleged deprivation. *See Braddy* at 802.

Next, the causal connection can be established "when a supervisor's custom or policy ... result[s] in deliberate indifference to constitutional rights." *Cottone*, 326 F.3d at 1360-61. To demonstrate either a policy or custom, the plaintiff must show "a persistent and wide-spread practice." *Depew v. City of St. Mary's, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986). Again, the allegations contained in the Amended Complaint fail to do so, as the alleged isolated events do not amount to a persistent and wide spread practice. Strip searches, when carried out in a reasonable manner, have been upheld as constitutional. The mere allegation that Cochran had a policy permitting such searches during the intake process at Metro is insufficient to show that the policy resulted in deliberate indifference to constitutional rights. Plaintiff does not allege a custom or policy of permitting violent, unreasonable searches.

11

Finally, the causal connection can be established "when facts support an inference that the supervisor directed the subordinated to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id*. Plaintiff has failed to allege facts indicating that Cochran directed Jane Doe to act unlawfully, that he knew she would act unlawfully, or that he failed to stop her from doing so. Though the Amended Complaint alleges that a policy permitting strip searches has been in place since 2002 (Doc. 40 at 8-9, ¶¶ 39-41), as explained above, such searches are permitted as long as they are carried out in a reasonable manner. There is no indication Cochran was aware that the searches were being carried out in an unreasonable manner or that he instructed his subordinates to do so. Plaintiff fails to allege any meaningful facts to suggest that Cochran personally participated, or was causally related, to the alleged deprivation of Plaintiff's constitutional right. As such, he is entitled to qualified immunity and the undersigned **RECOMMENDS** his motion to dismiss as to Count X be **GRANTED**. *See Gonzalez v. Reno*, 325 F.3d 1228, 1236 (11th Cir. 2003) ("Because plaintiffs have failed to allege that the supervisory defendants' conduct constituted a constitutional violation, the supervisory defendants are entitled to qualified immunity under the first step in our qualified immunity analysis.").

Although not styled as such, to the extent Plaintiff is also claiming that Cochran is liable for failure to adequately train related to Plaintiff's allegedly unlawful search (Doc. 40 at 25, ¶ 119), that claim also fails. Under § 1983, a supervisor can be held liable for failing to train his or her employees "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [officers] come into

contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989); *see also Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1397 (11th Cir. 1994) ("A supervisory official is not liable under section 1983 for an injury resulting from his failure to train subordinates unless his failure to train amounts to deliberate indifference to the rights of persons with whom the subordinates come into contact and the failure has actually caused the injury of which the plaintiff complains." (internal quotation marks omitted)). Thus, a plaintiff alleging a constitutional violation premised on a failure to train must demonstrate that the supervisor had "actual or constructive notice that a particular omission in their training program causes [his or her] employees to violate citizens' constitutional rights," and that armed with that knowledge the supervisor chose to retain that training program. *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

As the Court previously advised Plaintiff, her "complaint while asserting, again in a conclusory manner, that Cochran failed to adequately train Jane Doe, provided no facts to support such a conclusion. More specifically, Plaintiff failed to plead facts showing what training was provided or how/why the training was inadequate. Plaintiff, likewise, failed to present any facts establishing notice, actual or constructive, of the inadequacies Plaintiff refers to, whatever they may be. Therefore …. Plaintiff's § 1983 claims against Cochran based on his alleged failure to train employees, equally fails to state a claim." (Doc. 30 at 26-27). Plaintiff was permitted to amend her complaint to cure this deficiency. (Doc. 40). The Court has reviewed the only addition contained in the Amended Complaint pertinent to a failure to train claim (Doc. 40 at 9, ¶ 41). Plaintiff merely adds that "the sheriff required

13

training of the [intake receiving officers] to conduct the unlawful strip search." (Doc. 40 at 9, ¶41). Plaintiff's conclusory allegations, with regard to the failure to train claim, fail to state a claim. As a result, the claim is due to be **DISMISSED** pursuant to Rule 12(b)(6).

### B.  Count XI: Deliberate Indifference

Though labeled as "Deliberate Indifference/Unreasonable Seizure," several claims against Cochran are buried in Count XI of the Amended Complaint. (Doc. 40 at 26-29). With regard to what is specifically alleged against Cochran it appears Plaintiff attempts to raise three claims.

First, she contends that Cochran is "directly responsible for the neglect, carelessness and unskillfulness in the excessive and unreasonable use of force by Jane Doe" when she searched Plaintiff's person as described in Count X and that the search was done pursuant to Metro's unlawful policies, customs and practices. (Doc. 40 at 27-28, ¶ 129). For the same reasons detailed in the undersigned's Count X discussion above, even if Plaintiff has alleged a plausible constitutional violation with regard to the manner in which she was searched, she has failed to sufficiently allege causal connection between Cochran (a supervisor) and the alleged deprivations. Thus, this claim is due to be **DISMISSED**.

Second, Plaintiff claims she was subjected to cruel and unusual punishment as prohibited by the Eighth Amendment as a result of the search of her person upon arrival at Metro. (Doc. 40 at 27-29 ¶ 127,132). Recently, in *White v. Cochran*, the Court of Appeals for the Eleventh Circuit stated:

> The conditions under which pretrial detainees are held are reviewed under the Fourteenth Amendment's Due Process Clause, rather than under the Eighth Amendment's Cruel and Unusual Punishment Clause applicable to convicted prisoners. *Jacoby v. Baldwin Cty.,* 835 F.3d 1338, 1344 (11th Cir. 2016). We historically have treated convicted prisoners' Eighth Amendment claims and pretrial detainees' Fourteenth Amendment claims identically. *See, e.g., Keith v. DeKalb Cty.,* 749 F.3d 1034, 1044 n.35 (11th Cir. 2014) (stating that "the standard for providing basic human needs to those incarcerated or in detention is the same under both the Eighth and Fourteenth Amendments" (quotation omitted)).

*White v. Cochran*, No. 16-17490-G, 2017 WL 6492004, at *2 (11th Cir. Nov. 27, 2017).

A footnote to the above quoted section of this case stated:

> The Supreme Court stated in *Kingsley v. Hendrickson* that the language of the Eighth Amendment's Cruel and Unusual Punishment Clause and the Fourteenth Amendment's Due Process Clause "differs, and the nature of the claims often differs." 135 S.Ct. 2466, 2473–76 (2015) (adopting a different test to evaluate pretrial detainees' excessive-force claims than the test used to evaluate convicted prisoners' excessive-force claims). **However, we recently stated that *Kingsley* "is not squarely on point with and does not actually abrogate or directly conflict with" precedent outside of the context of an excessive-force claim**. *See Dang ex rel Dang v. Sheriff, Seminole Cty. Fla.,* 871 F.3d 1272, 1279 n.2 (11th Cir. 2017) (quotations omitted).

Id. at *2, n.2 (emphasis added). Plaintiff's cruel and unusual punishment claim as it pertains to the search of her person, is not an excessive force claim. Thus, the standard applied in this Court prior to the *Kingsley* and *Dang ex rel Dang* decisions remains in place. "To state an Eighth Amendment claim … a prisoner must allege facts to satisfy both an objective and subjective inquiry regarding a prison official's conduct." *Richardson v. Johnson,* 598 F.3d 734, 737 (11th Cir. 2010) (alteration added) (citing *Chandler v. Crosby,* 379 F.3d 1278, 1289 (11th Cir. 2004)). To satisfy the objective component, Plaintiffs "must allege a prison condition that is so extreme that it poses an unreasonable risk of serious damage to the prisoner's health or

15

safety." *Id.* The subjective component requires Plaintiffs to "allege that the prison official, at a minimum, acted with a state of mind that constituted deliberate indifference." *Id.* To successfully state a claim of deliberate indifference, Plaintiffs "must allege that a prison official (1) had subjective knowledge of a substantial risk of serious harm and (2) disregarded that risk "by conduct that is more than mere negligence." *Alvarez v. Sec'y, Fla. Dep't of Corr.*, 646 F. App'x. 858, 862 (11th Cir. 2016) (internal quotation marks omitted) (quoting *Richardson*, 598 F.3d at 737).

Plaintiff's claims with regard to the manner in which the search of her person was conducted, even accepted as true, did not present a threat to her health or safety. Thus, she has failed to allege an Eighth Amendment deliberate indifference claim with regard to the search of her person, and this claim is due to be **DISMISSED**. *See Katz* at 201 (requiring Court to determine whether the Plaintiff has alleged that the defendant violated a constitutional right).

Third, Plaintiff claims she was subjected to Fourth Amendment violations and Eighth Amendment violations as a result of Cochran's failure to train and negligent supervision. Plaintiff's Fourth Amendment claim is duplicative of the failure to train claim raised in Count X. As detailed above, the Court recommends dismissal of Plaintiff's failure to train claim for failure to state a claim. (*See supra* at p. 12-13). With regard to a claim that Cochran's failure to train and negligent supervision led to her enduring cruel and unusual punishment, Plaintiff fails to state a plausible § 1983 claim against Cochran for failure to train and negligent supervision even when the new allegations in the Amended Complaint are considered. Plaintiff alleges, "As

16

a direct and proximate result of the City's and metro jail's policies, customs and practices of arbitrarily strip searching all detainees and arrestees and of the City's and sheriff's failure to train properly and negligent supervision over execution of said policies, customs and practices, plaintiff was subjected to…cruel and unusual punishment in violation of the Eight[h] Amendment…" (Doc. 40 at 30, ¶ 136). However, Plaintiff's allegations do not allege that there was a substantial risk of serious harm to Plaintiff. Therefore, Plaintiff's allegations are insufficient to save her § 1983 claim against Cochran for failure to train and negligent supervision.

Moreover, just as in the original Complaint, in the Amended Complaint, Plaintiff does not allege a history of widespread abuse, and the allegations regarding the single incident involving Plaintiff, or even a few isolated incidences involving the Plaintiff on previous occasions, are not sufficient to show a history of widespread abuse or the existence of a custom or policy. *See also Doe v. School Bd. of Broward County, Fla.*, 604 F.3d 1248, 1266 (11th Cir. 2010) (quotation omitted). Additionally, Plaintiff did not allege any facts to suggest that Cochran directed correctional officers to act unlawfully or knew they would act unlawfully. Accordingly, Plaintiff has not alleged facts sufficient to state a plausible § 1983 claim based upon supervisory liability or for failure to train, and this claim, the undersigned **RECOMMENDS** that this claim be dismissed pursuant to Rule 12(b)(6).

Finally, with regard to Plaintiff's argument that she intended to include a claim for deliberate indifference for the failure of Jane Doe or Cochran to obtain medical attention for her injured wrist once she arrived at Metro, her Complaint is

17

devoid of any allegation that she told anyone *at Metro* (or that they were otherwise aware) of her need for treatment. An officer violates a detainee's "Fourteenth Amendment right to due process if he acts with deliberate indifference to the serious medical needs of the detainee." *Lancaster v. Monroe County,* 116 F.3d 1419, 1425 (11th Cir.1997). An officer acts with "deliberate indifference" when he knows that a detainee is in "serious need of medical care" and does not obtain medical care for that detainee. *Id.*

Because Plaintiff has not pled that Cochran or Jane Doe had knowledge of a risk of serious harm[5], she has failed to state a claim for deliberate indifference for a failure to provide medical treatment and this claim is due to be **DISMISSED**.

## CONCLUSION

Pursuant to the Court's previous orders, (Doc. 33, 38), only two claims against Sheriff Cochran remained. For the reasons set forth above, the undersigned **RECOMMENDS** that Cochran's Motion to Dismiss (Doc. 42) be **GRANTED** and that both remaining claims against him be **DISMISSED**.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed.

---

[5] Plaintiff's Amended Complaint alleges that she told the arresting officers that she had "severe pain…in her right wrist and arm…." (Doc. 40 at 5). However, there are no allegations that she complained to anyone at Metro Jail.

18

R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on un-objected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** and **ORDERED** this **23rd** day of **January 2018.**

/s/ *Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**